[Cite as *State v. Marcum*, 2011-Ohio-3100.]

**[Please see nunc pro tunc opinion at 2011-Ohio-3709.]**

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 10-CA-0137 |
| JEROME B. MARCUM | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Criminal appeal from the Licking County Court of Common Pleas, Case No. 2009-CR-00677

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: June 23, 2011

APPEARANCES:

For Plaintiff-Appellee

DANIEL HUSTON
20 S. Second Street
Newark, OH 43055

For Defendant-Appellant

THOMAS M. TYACK
TYACK, BLACKMORE, LISTON & NIGH
536 S. High Street
Columbus, OH 43215

*Gwin, P.J.*

{¶1} Defendant-appellant, Jerome B. Marcum, appeals his convictions on two counts of aggravated murder, and one count of attempted aggravated murder, each with a firearm specification. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2} Appellant and his ex-wife, Bonnie Marcum, lived in a house in Licking County next door to his sister, Sonia Marcum, and across the street from John Walsh. In December of 2009, appellant came to believe that his sister Sonia had taken steps to cut off his access to water from a common well that was shared between the two homes. This belief triggered a series of unfortunate events.

{¶3} During the events which occurred in this case, appellant was seventy years old with serious health problems and had been on disability for a substantial period of time. He had no previous criminal record or record of any substance abuse.

{¶4} On December 18, 2009, at approximately 3:20 p.m., appellant shot and killed John Walsh by a water well housing located in the front yard of his sister's home. Specifically, appellant shot Mr. Walsh with a Defender .38 caliber pistol in the left abdomen and then in the top of his head. After shooting Mr. Walsh, appellant chased his sister, Sonia Marcum, into her garage and shot and killed her. Specifically, appellant shot Sonia in the left flank and also in the head above her right ear. Appellant returned to his residence and placed the pistol in his bedroom.

{¶5} Appellant then drove to the home of his brother located at 14201 Vance Rd., Mt. Vernon, Knox County, Ohio. Once there, he concealed himself, and waited for Homer (Clarence) Marcum to return home. When Homer returned home and was

unloading groceries in his garage, appellant approached and tried to shoot him by pulling the trigger on a SAR semi-automatic assault rifle. However, the rifle did not fire because, although the rifle had ammunition in its magazine, there was no round in the chamber. Homer was then able to physically subdue appellant until deputies from the Knox County Sheriff's Office arrived.

{¶6} When interviewed by Detective Marc Brill of the Licking County Sheriff's Office, appellant admitted to the killings of his sister and Mr. Walsh and the attempted killing of his brother, expressing his displeasure about the way that his family had treated him and relating that his sister two (2) days prior had apparently turned off the water from the well that supplied his house. When asked why he wanted to kill his sister, brother, and Mr. Walsh, appellant answered: "so they wouldn't aggravate the rest of the world."

{¶7} Appellant was indicted on three counts. Count One charged him with aggravated murder of John Walsh who lived across the street from the residence occupied by appellant and his former wife, Bonnie Marcum. Count Two charged appellant with aggravated murder of his sister, Sonia Marcum, who resided next door to appellant. Both counts alleged "prior calculation and design" as the element raising the charges to aggravated murder. Count Three charged appellant with attempted aggravated murder of Homer Marcum, his brother. Each count contained a firearm specification.

{¶8} A psychological assessment was undertaken to determine appellant's mental health and competency to stand trial. Appellant was found competent to stand trial.

**{¶9}** The jury convicted appellant as charged in the indictment. The trial court sentenced appellant to fifteen years to life plus an additional three years for a gun specification on Count 1, twenty-five years to life plus an additional three years for a gun specification on Count 2, and ten years with a an additional three years for a gun on Count three, for an aggregate sentence of sixty-nine years to life.

**{¶10}** Appellant has timely appealed raising the following assignments of error for our consideration:

**{¶11}** "I. GIVEN THAT ALL OF THE EVENTS RELATING TO COUNT 3, THE ATTEMPTED AGGRAVATED MURDER CHARGE, OCCURRED IN KNOX COUNTY, THE TRIAL COURT ERRED IN ALLOWING THE CONVICTION TO STAND ON THAT CHARGE IN THE CASE TRIED IN LICKING COUNTY (JUDGMENT ENTRY FILED 11/19/10).

**{¶12}** "II. THE TRIAL COURT ERRED IN FINDING THAT THE EVIDENCE WAS SUFFICIENT AS TO COUNT 1 TO PERMIT THE DEFENDANT TO BE CONVICTED OF THE OFFENSE OF AGGRAVATED MURDER (JUDGMENT ENTRY FILED 11/19/10).

**{¶13}** "III. THE VERDICT FINDING THE DEFENDANT GUILTY OF AGGRAVATED MURDER AS TO COUNT 1 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE (JUDGMENT ENTRY FILED 11/19/10).

**{¶14}** "IV. THE TRIAL COURT ERRED IN FINDING THAT THE EVIDENCE WAS SUFFICIENT AS TO COUNT 2 TO PERMIT THE DEFENDANT TO BE CONVICTED OF THE OFFENSE OF AGGRAVATED MURDER (JUDGMENT ENTRY FILED 11/19/10).

{¶15} "V. THE VERDICT FINDING THE DEFENDANT GUILTY OF AGGRAVATED MURDER AS TO COUNT 2 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE (JUDGMENT ENTRY FILED 11/19/10).

{¶16} "VI. THE TRIAL COURT ERRED IN FINDING THAT THE EVIDENCE WAS SUFFICIENT AS TO COUNT 3 WAS SUFFICIENT TO HAVE UPHOLD A VERDICT OF GUILTY OF ATTEMPTED AGGRAVATED MURDER (JUDGMENT ENTRY FILED 11/19/10).

{¶17} "VII. THE VERDICT FINDING THE DEFENDANT GUILTY OF ATTEMPTED AGGRAVATED MURDER AS TO COUNT 3 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE (JUDGMENT ENTRY FILED 11/19/10)."

I.

{¶18} In his First Assignment of Error, appellant contends that the evidence failed to establish that Licking County was the proper venue for trial of the attempted aggravated murder charge contained in Count Three of the Indictment. We disagree.

{¶19} Section 10 of Article I of the Ohio Constitution requires that: "* * * [i]n any trial, in any court, the party accused shall be allowed * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed * * *." Crim.R. 18(A) states that, "(t)he venue of a criminal case shall be as provided by law."

{¶20} "Venue is not a material element of any offense charged. The elements of the offense charged and the venue of the matter are separate and distinct. *State v. Loucks* (1971), 28 Ohio App.2d 77, 274 N.E.2d 773, and *Carbo v. United States* (C.A.9, 1963), 314 F.2d 718. Yet, in all criminal prosecutions, venue is a fact that must be

proved at trial unless waived. *State v. Nevius* (1947), 147 Ohio St. 263, 71 N.E.2d 258."
*State v. Draggo* (1981), 65 Ohio St.2d 88, 90, 418 N.E.2d 1343, 1345.

{¶21} R.C. 2901.12 contains the statutory foundation for venue. The relevant provisions of this section read, in pertinent part, as follows:

{¶22} "(A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed.

{¶23} " * * *

{¶24} "(D) When the offense is conspiracy, attempt, or complicity cognizable under division (A) (2) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the conspiracy, attempt, complicity, or any of its elements occurred.

{¶25} "(E) When the offense is conspiracy or attempt cognizable under division (A)(3) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the offense that was the object of the conspiracy or attempt, or any element of that offense, was intended to or could have taken place. When the offense is complicity cognizable under division (A) (3) of section 2901.11 of the Revised Code, the offender may be tried in any jurisdiction in which the principal offender may be tried.

{¶26} " * * *

{¶27} "(G) When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions.

{¶28} "(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred* * * "

{¶29} The "'locus delicti [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it." ' *United States v. Cabrales* (1998), 524 U.S. 1, 6-7, 118 S.Ct. 1772, 141 L.Ed.2d 1 (quoting *United States v. Anderson* (1946), 328 U.S. 699, 703, 66 S.Ct. 1213, 90 L.Ed. 1529,). In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts. See *United States v. Rodriguez* (1999), 526 U.S. 275, 279, 119 S.Ct. 1239, 1242-1243, 143 L.Ed.2d 388; *Cabrales,* supra, at 6-7, 524 U.S. 1, 118 S.Ct. 1772, 141 L.Ed.2d 1; *Travis v. United States* (1961), 364 U.S. 631, 635-637, 81 S.Ct. 358, 5 L.Ed.2d 340; *United States v. Cores* (1958), 356 U.S. 405, 408-409, 78 S.Ct. 875, 2 L.Ed.2d 873; *Anderson, supra,* at 703-706, 328 U.S. 699, 66 S.Ct. 1213, 90 L.Ed. 1529. "Dissection of the relevant provisions, namely R.C. 2901.12(A) and (H) and, more specifically, (G), explicitly denotes that venue is proper if '* * * (the) offense or any element' was committed in the court's jurisdiction." *State v. Draggo* (1981), 65 Ohio St.2d 88, 90-91, 418 N.E.2d 1343, 1345. See also, *State v. Engle*, Fairfield App. No. 03-CA-84, 2005-Ohio-276 at ¶ 34.

{¶30} Accordingly disposition of appellant's proposition of law is dependent upon the determination of whether "any element" of the crimes were committed within Licking County, thereby making that county a proper location for the trial.

{¶31} The elements of a crime are the constituent parts of an offense which must be proved by the prosecution to sustain a conviction. Elements necessary to constitute a crime must be gathered wholly from statute and not aliunde. *State v. Draggo,* supra, citing *State v. Winters* (1965), 2 Ohio St.2d 325, 209 N.E.2d 131; *State v. Cimpritz* (1953), 158 Ohio St. 490, 110 N.E.2d 416.

{¶32} R.C. 2903.01 defines the crime of aggravated murder, "(A) No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy…" Pursuant to R.C. 2901.22(A), "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

{¶33} R.C. 2923.02(A) provides a definition of attempt: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶34} The Ohio Supreme Court has held that a criminal attempt occurs when the offender commits an act constituting a substantial step towards the commission of an offense. *State v. Woods* (1976), 48 Ohio St.2d 127, 357 N.E.2d 1059, paragraph one of the syllabus, overruled in part by *State v. Downs* (1977), 51 Ohio St.2d 47, 364 N.E.2d 1140. In defining substantial step, the *Woods* Court indicated that the act need not be the last proximate act prior to the commission of the offense. *Woods* at 131-32, 357 N.E.2d 1059. However, the act "must be strongly corroborative of the actor's criminal

purpose." Id. at paragraph one of the syllabus. This is not necessarily a test for venue purposes. Rather this test "properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent." *Woods,* supra at 132, 357 N.E.2d at 1063. In other words, a substantive crime would have been committed had it not been interrupted.

{¶35} In the case at bar, a series of crimes was committed by appellant in both Licking and Knox counties. "The outer limits on how broadly Congress may define a continuing offense and thereby create multiple venues are unclear. In addition, although 'the venue requirement is principally a protection for the defendant,' *Cabrales,* 524 U.S. at 9, 118 S.Ct. 1772, 141 L.Ed.2d 1, other policy considerations are relevant to the proper venue in particular cases. To determine whether the application of a venue provision in a given prosecution comports with constitutional safeguards, a court should ask whether the criminal acts in question bear 'substantial contacts' with any given venue. *United States v. Reed,* 773 F.2d 477, 481 (2d Cir.1985). The substantial contacts rule offers guidance on how to determine whether the location of venue is constitutional, especially in those cases where the defendant's acts did not take place within the district selected as the venue for trial. While it does not represent a formal constitutional test, *Reed* is helpful in determining whether a chosen venue is unfair or prejudicial to a defendant. This test takes into account four main factors: (1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) suitability of the venue chosen for accurate fact-finding. See Id.

at 481." *United State v. Saavedra* (2nd Cir. 2000), 233 F.3d 85, 92-93. *Engle*, supra at ¶ 43.

**{¶36}** In addition, although this was not a death-penalty case we find the analysis utilized by the courts in considering the specifications that qualify a defendant for the death penalty pursuant to R.C. 2929.04(A) (5) to be helpful in determining whether appellant could be tried for all three offenses in Licking County. Under R.C. 2929.04(A) (5), the death penalty may be imposed for aggravated murder if "the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender." It is the course of conduct involving multiple killings element that we shall exaimine to help us determine whether venue was proper in the case at bar.

**{¶37}** To find that two offenses constitute a single course of conduct under R.C. 2929.04(A) (5), the trier of fact must find some connection, common scheme, pattern or psychological thread that ties the offenses together. *State v. Sapp,* 105 Ohio St. 3d 104, 822 N.E. 2d 1239, 2004-Ohio-7008, ¶ 52. "[T]he factual link might be one of time, location, murder weapon, or cause of death. It might involve the killing of victims who are close in age or who are related. It might involve a similar motivation on the killer's part for his crimes, a common getaway car, or perhaps a similar pattern of secondary crimes (such as rape) involving each victim." Id. Ultimately, "when two or more offenses are alleged to constitute a course of conduct under R.C. 2929.04(A)(5), all the circumstances of the offense, must be taken into account." Id. at ¶ 56. Accord, *State v. Perez*, 124 Ohio St.3d 122, 920 N.E.2d 104, 2009-Ohio-6179 at ¶78; *State v. McKnight*, 107 Ohio St.3d 101, 873 N.E.2d 315, 2005-Ohio-6046 at ¶ 124.

**{¶38}** In the case at bar, the aggravated murders of Mr. Walsh, Ms. Marcum and the attempted aggravated murder of Homer Marcum involved firearms utilized or attempted to be used at close range. Further two of the three victims are relatives of the appellant. All three offenses occurred within approximately forty-five minutes of each other. We note that Homer Marcum's residence is located at 14201 Vance Road, Mt. Vernon, Knox County Ohio. (T. 204). Deputy Courtenay Biggs of the Knox County Sherriff's Office testified that Homer Marcum's residence, "It's right on the line. I mean, one side of Vance [Road] is actually in Licking County and the north side is in Knox [County]." (T. at 276). We are not therefore faced with a situation in which an accused is forced to defend an action in a distant, inconvenient forum. *Engle*, supra at ¶ 44.

**{¶39}** Here, the evidence produced at trial showed a clear factual link between the aggravated murders of Mr. Walsh and Ms. Marcum and the attempted aggravated murder of Homer Marcum. Based on the totality of the circumstances, we find that evidence was sufficient to support appellant's trial of all three charges in Licking County. Appellant has not argued any identifiable prejudice resulted in his being tried in Licking County on Count Three of the Indictment.

**{¶40}** Accordingly, we conclude that the trier of fact properly found that there was venue under R.C. 2901.12 to prosecute Count Three of the Indictment charging appellant with the attempted aggravated murder of Homer Marcum in Licking County, Ohio.

**{¶41}** Appellant's First Assignment of Error is overruled.

II. – IV.

**{¶42}** Appellant's remaining assignments of error challenge the sufficiency and the weight of the evidence concerning the element of prior calculation and design with respect to the killings of John Walsh and Sonia Marcum.  Appellant further contends that the finding that he attempted to purposely cause the death of his brother Homer Marcum is based upon insufficient evidence and against weight of the evidence.

**{¶43}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown* (2010), --- U.S. ----, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (reaffirming this standard).  See, *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010-Ohio-2720 at ¶68.

**{¶44}** *Jackson* thus establishes a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. This means that a court of appeals may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial. See Id. at 318-319, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Rather, when "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any

such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; see also *McDaniel,* --- U.S. ----, 130 S.Ct. at 673-674, 175 L.Ed.2d 582; *United States v. Nevils* (C.A.9, 2010), 548 F.3d 802.

**{¶45}** Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. See, *State v. Clay*, supra at ¶ 70.

**{¶46}** This second step protects against rare occasions in which "a properly instructed jury may * * * convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 317, 99 S.Ct. 2781, 61 L.Ed.2d 560. More than a "mere modicum" of evidence is required to support a verdict. Id. at 320, 99 S.Ct. 2781, 61 L.Ed.2d 560 (rejecting the rule that a conviction be affirmed if "some evidence" in the record supports the jury's finding of guilt). At this second step, however, a reviewing court may not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,' " Id. at 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560, quoting *Woodby v. INS* (1966), 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362, only whether "*any*" rational trier of fact could have made that finding, Id. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. *Nevils.*

**{¶47}** Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a

manifest miscarriage of justice, *State v. Thompkins* (1997), 78 Ohio St. 3d 387, 678 N.E.2d 541, 1997-Ohio-52, superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." *State v. Thompkins*, supra, 78 Ohio St.3d at 387, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.

**{¶48}** In *Thompkins*, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; *State v. Miller* (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶38, 775 N.E.2d 498.

### A.    Prior Calculation and Design: John Walsh.

{¶49} In his Second Assignment of Error appellant alleges that there was insufficient evidence to permit the jury to make a finding of prior calculation and design as to the killing of John Walsh. In his Third Assignment of Error, appellant argues that the finding of prior calculation and design in the shooting of John Walsh was against the weight of the evidence.

{¶50} R.C. 2903.01 defines the crime of aggravated murder, "(A) No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy…" Pursuant to R.C. 2901.22(A), "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

{¶51} There is no bright-line test to determine whether prior calculation and design are present. Rather, each case must be decided on a case-by-case basis. *State v. Taylor* (1997), 78 Ohio St.3d 15, 18-20, 676 N.E.2d 82. The Ohio Supreme Court has held, "Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified." *State v. Cotton* (1978), 56 Ohio St.2d 8, 10 O.O.3d 4, 381 N.E.2d 190, paragraph three of the syllabus. Accord, *State v. Braden*, 98 Ohio St.3d 354, 785 N.E.2d 439, 2003-Ohio-325 at ¶ 61.

{¶52} Accordingly, to sustain appellant's aggravated murder conviction, the state had the burden of proving beyond a reasonable doubt that, under the facts and circumstances of this case, appellant had sufficient time and opportunity to plan John Walsh's death, and that, under the surrounding circumstances, appellant had a scheme designed to implement a calculated decision to kill John Walsh.

{¶53} "[P]rior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes." *State v. Coley,* 93 Ohio St.3d 253, 264, 2001-Ohio-1340, 754 N.E.2d 1129. In *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, the Ohio Supreme Court held that one's actions could display a plan to kill. In *Conway*, upon hearing that his brother had been stabbed, Conway retrieved a gun from his car and began shooting at the alleged perpetrator. The Court held that "[a]lthough they took only a few minutes, Conway's actions went beyond a momentary impulse and show that he was determined to complete a specific course of action. Such facts show that he had adopted a plan to kill." Id. at ¶ 46, 842 N.E.2d 996. In the instant case, the evidence established that appellant conceived a plan to kill and acted on that plan with brutal composure.

{¶54} In the case at bar, appellant admitted to Detective Brill that he was "upset and angry" with his sister Sonia Marcum for shutting off his well water. Appellant further admitted to Detective Brill that he planned to kill his sister when he left his residence and that his stated intent to get the mail was just an "excuse" to leave his residence. Appellant took his .38 caliber handgun with him when he left his residence to allegedly get the mail; Appellant concealed this handgun from Bonnie Marcum and the victims when he approached them. Appellant had twenty

four hundred dollars in cash in his wallet which he told Detective Brill was to use for appellant to flee to West Virginia after the killings. (T. at 391).

**{¶55}** If the victim is killed in a cold-blooded, execution-style manner, the killing bespeaks aforethought, and a jury may infer prior calculation and design. See *State v. Campbell* (2000), 90 Ohio St.3d 320, 330, 738 N.E.2d 1178; *State v. Palmer* (1997), 80 Ohio St.3d 543, 570, 687 N.E.2d 685; *State v. Taylor* (1997),] 78 Ohio St.3d 15, 21, 676 N.E.2d 82; *State v. Mardis* (1999), 134 Ohio App.3d 6, 19, 729 N.E.2d 1272.

**{¶56}** In the case at bar, appellant shot John two (2) times at close range, the first shot striking him in the abdomen, and the second shot striking him in the top of the head.

**{¶57}** A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.

**{¶58}** Although appellant cross-examined the witnesses and argued that he did not set out with a plan to kill Mr. Walsh and that he felt confronted by Mr. Walsh the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881. The jury was free to accept or reject any and all of the evidence offered by the

parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; *State v. Burke*, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.

{¶59} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crimes charged in the indictment.

{¶60} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial. The evidence in the record could convince a reasonable trier of fact that the element of prior calculation and design concerning the killing of John Walsh had been met by the state.

{¶61} Appellant's conviction for the aggravated murder of John Walsh is supported by sufficient evidence, and not against the manifest weight of the evidence.

{¶62} Appellant's Second and Third Assignments of Error are overruled.

**{¶63}  B. Prior Calculation and Design: Sonia Marcum**.

{¶64} In appellant's Fourth Assignment of Error appellant alleges that there was insufficient evidence to permit the jury to make a finding of prior calculation and design as to the killing of Sonia Marcum. In his Fifth Assignment of Error, appellant argues that the finding of prior calculation and design in the shooting of Sonia Marcum was against the weight of the evidence.

{¶65} In the case at bar, appellant admitted to Detective Brill that he was "upset and angry" with his sister Sonia Marcum for shutting off his well water. Appellant further admitted to Detective Brill that he planned to kill his sister when he left his residence and that his stated intent to get the mail was just an "excuse" to leave his residence. Appellant took his .38 caliber handgun with him when he left his residence to allegedly get the mail; Appellant concealed this handgun from Bonnie Marcum and the victims when he approached them. After shooting John Walsh twice, appellant chased Sonia Marcum over ninety-five feet as she ran screaming that she was going to call the police. She fled inside her garage where appellant caught her and shot her two times at close range. The first shot hit Sonia on her left side near her arm pit the second shot entered Sonia's head on the right side just above the ear. Appellant had twenty four hundred dollars in cash in his wallet which he told Detective Brill was to use for appellant to flee to West Virginia after the killings. (T. at 391).

{¶66} A fundamental premise of our criminal trial system is that 'the jury is the lie detector.' *United States v. Barnard*, 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the

weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.

**{¶67}** Although appellant cross-examined the witnesses and argued that he did not set out with a plan to kill his sister and that the verbal confrontation erupted spontaneously into the shooting, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881. The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP-739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; *State v. Burke*, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.

**{¶68}** After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crimes charged in the indictment.

**{¶69}** The evidence in the record could convince a reasonable trier of fact that the element of prior calculation and design concerning the killing of Sonia Marcum had been met by the state. Appellant's conviction for the aggravated murder of Sonia Marcum is supported by sufficient evidence, and not against the manifest weight of the evidence.

**{¶70}** Appellant's Fourth and Fifth Assignments of Error are overruled.

**{¶71} C. Attempted Murder of Homer Marcum**

**{¶72}** Appellant next alleges that there was insufficient evidence to permit the jury to find that he intended to kill his brother, Homer Marcum, due to the fact that a bullet was not chambered in the rifle. He further argues his conviction for attempted aggravated murder was against the manifest weight of the evidence.

**{¶73}** R.C. 2923.02(A) provides a definition of attempt: "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

**{¶74}** The Ohio Supreme Court has held that a criminal attempt occurs when the offender commits an act constituting a substantial step towards the commission of an offense. *State v. Woods* (1976), 48 Ohio St.2d 127, 357 N.E.2d 1059, paragraph one of the syllabus, overruled in part by *State v. Downs* (1977), 51 Ohio St.2d 47, 364 N.E.2d

1140; See also, *State v. Ashbrook*, 5th Dist. No.2004-CA-00109, 2005-Ohio-740, reversed on other grounds and remanded for re-sentencing pursuant to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856; *In re: Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109. In defining substantial step, the *Woods'* Court indicated that the act need not be the last proximate act prior to the commission of the offense. *Woods* at 131-32, 357 N.E.2d 1059. However, the act "must be strongly corroborative of the actor's criminal purpose." Id. at paragraph one of the syllabus. This test "properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent."  *Woods*, supra at 132, 357 N.E.2d at 1063. In other words, a substantive crime would have been committed had it not been interrupted. R.C. 2923.02(D) provides that: "[i]t is an affirmative defense to a charge under this section that the actor abandoned his effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

{¶75}  However, the abandonment must be "complete" and "voluntary" in order to exculpate a defendant. Where one abandons an attempted crime because he fears detection or realizes that he cannot complete the crime, the "abandonment" is neither "complete" nor "voluntary."  *Woods*, supra, 48 Ohio St. 2d at 133.

{¶76} Precisely what conduct will be held to be a substantial step must be determined by evaluating the facts and circumstances of each particular case.  *State v. Group* (2002), 98 Ohio St.3d 248, 262, 2002-Ohio-7247 at ¶100, 781 N.E.2d 980, 996.

{¶77} The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances, including acts and statements of a defendant. *State v. Garner* (1995), 74 Ohio St.3d 49, 60, 1995-Ohio-168, 656 N.E.2d 623, 634; *State v. Wallen* (1969), 21 Ohio App.2d 27, 34, 254 N.E.2d 716, 722. "Intent need not be proven by direct testimony.  *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302. Instead, intent to kill 'may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound.'  *State v. Robinson* (1954), 161 Ohio St. 213, 53 O.O. 96, 118 N.E.2d 517, at paragraph five of the syllabus; *State v. Eley* (1996), 77 Ohio St.3d 174, 180, 672 N.E.2d 640, 648".  *State v. Stallings* (2000), 89 Ohio St.3d 280, 290, 2000-Ohio-159, 731 N.E.2d 159,171.

{¶78} The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death. *State v. Mackey* (1999), Cuyahoga App. No. 75300, dismissed, appeal not allowed (2000), 88 Ohio St.3d 1496, 727 N.E.2d 920, citing *State v. Widner* (1982), 69 Ohio St.2d 267, 431 N.E.2d 1025 (finding purpose to kill in passenger's firing gun at individual from moving vehicle); *State v. Dunlap* (1995), 73 Ohio St.3d 308, 316, 652 N.E.2d 988, certiorari denied (1996), 516 U.S. 1096, 116 S.Ct. 1096, 133 L.Ed.2d 765. *State v. Banks*, 10th Dist. No. 01 AP-1179, 2002-Ohio-3341 at ¶24.

{¶79} "[T]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." *State v. Turner* (1997), Franklin App. No. 97APA05-709, dismissed, appeal not allowed (1998), 81 Ohio St.3d 1496, 691 N.E.2d 1058 (finding sufficient evidence of intent to kill in firing

a gun from an automobile at a group of individuals), quoting *State v. Brown* (1996), Cuyahoga App. No. 68761, dismissed, appeal not allowed, 77 Ohio St.3d 1468, 673 N.E.2d 135; see, also, *State v. Smith* (1993), 89 Ohio App.3d 497, 501, 624 N.E.2d 1114 (finding that pointing a gun at a group of people less than twenty feet away and shooting at least one shot could be used by the trier of fact as proof of intention to kill). *Banks*, supra, at ¶26.

{¶80} The record in the case at bar establishes that after shooting John Walsh and Sonia Marcum, appellant returned to his home where he hid the handgun he had just used. Appellant had a loaded small caliber pistol and an assault rifle as he left his home to go to the home of his brother. Upon arrival, appellant parked his car out of site and concealed himself to await the return of Homer Marcum. When his brother arrived, appellant pointed the rifle at him and pulled the trigger. Appellant admitted that he intended to kill not only Homer Marcum but also Homer's wife. Appellant had twenty four hundred dollars in cash in his wallet which he told Detective Brill was to use for appellant to flee to West Virginia after the killings. (T. at 391).

{¶81} Although appellant cross-examined the witnesses and argued that he did not plan to kill his brother because the rifle did not have a bullet in firing position, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.

{¶82} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury

did not create a manifest injustice by concluding that appellant was guilty of the crimes charged in the indictment.

**{¶83}** We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial. The evidence in the record could convince a reasonable trier of fact that appellant attempted to kill Homer Marcum.

**{¶84}** Appellant's conviction for the attempted aggravated murder of Homer Marcum is supported by sufficient evidence, and not against the manifest weight of the evidence.

**{¶85}** Appellant's Sixth Assignment of Error is overruled.

**{¶86}** For the foregoing reasons, the judgment of the Licking County Court of Common Pleas, Licking County, Ohio is affirmed.


By Gwin, P.J.,

Hoffman, J., and

Edwards, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JULIE A. EDWARDS

WSG:clw 0531

[Cite as *State v. Marcum*, 2011-Ohio-3100.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
          Plaintiff-Appellee     :
                                       :
                                       :
-vs-                                   :          JUDGMENT ENTRY
                                       :
JEROME B. MARCUM                       :
                                       :
                                       :
          Defendant-Appellant    :          CASE NO. 10-CA-0137


    For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Licking County Court of Common Pleas, Licking County, Ohio is affirmed.  Costs to

appellant.


                                                _____

                                                HON. W. SCOTT GWIN


                                                _____

                                                HON. WILLIAM B. HOFFMAN


                                                _____

                                                HON. JULIE A. EDWARDS