[Cite as *State v. Gillespie*, 2017-Ohio-6936.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 11-16-07

      v.

BRADLEY R. GILLESPIE,              O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Paulding County Common Pleas Court
Trial Court No. CR-16-520

**Judgment Affirmed**

**Date of Decision:   July 24, 2017**


APPEARANCES:

    *Timothy C. Holtsberry* **for Appellant**

    *Joseph R. Burkard* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-Appellant Bradley R. Gillespie ("Appellant") appeals his conviction of two counts of Murder, both unclassified felonies, from the Paulding County Court of Common Pleas. Appellant alleges six assignments of error related to the convictions, including: the jury verdict was against the manifest weight of the evidence; the trial court erred in denying his Crim.R. 29 motion for acquittal; the trial court erred by not giving a jury instruction for lesser included offenses and/or a lesser degree of murder when the evidence warranted such instructions; the trial court erred by not providing jury instructions on self-defense; the trial court erred by not ruling on Appellant's request for new trial counsel; and Appellant was denied effective assistance of counsel at trial. For the reasons that follow, we affirm Appellant's convictions.

*Statement of the Case and Facts*

{¶2} As of January, 2016 Frank Tracy, Jr. ("Frank") and Hannah Fisher ("Hannah") resided together at 119 West Perry Street, Apt. C, in Paulding, Ohio. Both Frank and Hannah had reputations for being Methamphetamine ("meth") users. Appellant had, on occasion, purchased meth from Frank. Further, Appellant and Hannah were acquaintances through Frank.

{¶3} Sometime during January, 2016, Frank and Appellant had an altercation, which resulted in Frank pointing an unloaded gun at Appellant's head

and pulling the trigger.[1] Appellant was angry and upset at Frank over the event and asked his co-worker and ex-girlfriend, Esmeralda Ferguson ("Ferguson"), to borrow her Glock 40 caliber handgun, to scare Frank for scaring him. Ferguson gave Appellant her handgun on the evening of February 1, 2016.

{¶4} The next evening, February 2, 2016, Frank, Hannah, and Appellant were riding together in a red 2016 Jeep regularly used by Frank. The three were using drugs. At some point while in the Jeep, Appellant shot Hannah and Frank. Both Frank and Hannah were killed as a result of gunshot wounds to the head.

{¶5} At approximately 1 a.m. on February 3, 2016, Appellant went to the Community Memorial Hospital in Hicksville, Ohio, and was treated for a laceration to his right wrist. Dr. Cui treated Appellant at the hospital for a laceration that was approximately four (4) centimeters in length on Appellant's right wrist. According to the medical records produced at trial, Appellant indicated that his wrist injury had occurred approximately two (2) hours prior to his arrival at the hospital.

{¶6} Appellant returned to work on February 3 and returned Ferguson's handgun to her. At trial, Ferguson testified that when she asked Appellant what had happened with the gun, Appellant responded that he "shot him [Frank] in the head and threw him in the river." (09/27/16 Tr., Vol. II, at 449). Ferguson also testified that Appellant asked to purchase her handgun, but she refused. Ferguson did not

---

[1] Testimony at trial revealed that Appellant was unaware that the gun was unloaded at the time.

immediately contact law enforcement as a result of Appellant's comments of shooting Frank.

{¶7} On February 9, 2016, Hannah's body was located in her apartment. An autopsy revealed that Hannah died from a single gunshot wound to the head. Crime scene investigators concluded that Hannah's body had been pulled into her apartment, and that the location where her body was discovered was not the location where she was killed. Investigators determined that there was little blood inside the apartment, but there was a substantial amount of blood in both the driver and passenger seats of the red 2016 Jeep, which was located outside of Hannah and Frank's apartment.

{¶8} Investigators further determined that the driver's side window of the Jeep was broken out and covered with a blanket. Additionally, the blood collected by investigators from the Jeep revealed Frank's DNA in the driver's seat and Hannah's DNA in the passenger seat. Investigators also found a spent shell casing in the rear passenger seat area of the Jeep. The shell casing was later determined to be from Ferguson's handgun.

{¶9} Ferguson turned over her Glock handgun to the Paulding Police Department on March 4, 2016. Ultimately, testing at the Ohio Bureau of Criminal Investigation ("BCI") revealed that the handgun contained Frank's DNA.

{¶10} On March 15, 2016, Frank's body was discovered along the Maumee River in Rochester Cemetery near Cecil, Ohio. An autopsy of Frank's body revealed that a single gunshot wound to the head was the cause of his death.

{¶11} Appellant was subsequently arrested as a result of the investigation into Frank and Hannah's murders.

*Procedural History*

{¶12} On March 28, 2016, the Paulding County Grand Jury returned a two count indictment against Appellant, charging him with: Count I, Murder, an unclassified felony, with a firearm specification; and Count II, Murder, an unclassified felony, also with a firearm specification. The indictment alleged that on or about February 3, 2016, Appellant purposely caused the death of Hannah Fisher and Frank A. Tracy, Jr. The indictment also alleged that Appellant had a firearm about his person or under his control while committing the offenses.

{¶13} This matter proceeded to a jury trial on September 26, 2016. Prior to the commencement of trial, defense counsel requested a motion in limine regarding statements that Appellant made to law enforcement officers who transported him from the correctional facility to court. On September 27, 2016, the trial court granted the motion in part, finding that the officers "interrogated" Appellant impermissibly without advising Appellant of his *Miranda* rights. However, the trial court also denied the motion in part, finding that the Appellant had volunteered

certain information to the officers, which did not require the advisement of his *Miranda* rights.

{¶14} Also on the 27th of September, defense counsel filed a request for additional jury instructions on lesser included offenses to the murder charges. On September 30, 2014 the trial concluded and the jury returned verdicts of "guilty" to both counts of murder. The jury also found Appellant had a firearm on his person or under his control for each of the murders.

{¶15} On October 31, 2016 the trial court sentenced Appellant to two indefinite prison terms, with a minimum sentence of 15 years for each count. The trial court also imposed the 1 year of mandatory prison time for each firearm specification. The trial court ordered that the murder and the specification terms to run consecutively to each other, with the specification terms to be served prior to the indefinite prison terms. Thus, Appellant was ordered to serve a minimum term of imprisonment of thirty-two (32) years.

{¶16} From his convictions Appellant timely appealed, and presents the following assignments of error for our review:

**ASSIGNMENT OF ERROR NO. I**

**THE VERDICT OF THE JURY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIMINAL RULE 29 MOTIONS FOR ACQUITTAL WHEN THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION.**

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT ERRORED [SIC] BY NOT GIVING A JURY INSTRUCTION FOR LESSER INCLUDED CRIMES OR LESSER DEGREE OF MURDER WHEN THE EVIDENCE WARRANTED SUCH AN INSTRUCTION.**

**ASSIGNMENT OF ERROR NO. IV**

**THE TRIAL COURT ERRORED [SIC] BY NOT PROVIDING TO THE JURY INSTRUCTIONS REGARDING SELF-DEFENSE.**

**ASSIGNMENT OF ERROR NO. V**

**THE TRIAL COURT ERRORED [SIC] IN NOT CONSIDERING OR RULING ON DEFENDANT'S REQUEST FOR NEW TRIAL COUNSEL.**

**ASSIGNMENT OF ERROR NO. VI**

**THE DEFENDANT WAS DENIED HIS RIGHTS UNDER THE SIXTH AMENDMENT TO EFFECTIVE ASSISTANCE OF COUNSEL.**

*Assignment of Error I*

**{¶17}** In his first assignment of error, Appellant alleges that the verdict was against the manifest weight of the evidence. Specifically, Appellant asserts that the jury verdict is against the manifest weight of the evidence due to the lack of physical

evidence connecting him to the Red Jeep, to Hannah's apartment, and to Hannah or Frank's bodies. For the reasons set forth below, we disagree.

*Standard of Review*

**{¶18}** In analyzing a claim that a conviction is against the manifest weight of the evidence, an appellate court:

> sits as the "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. * * * The appellate court, "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction."

*State v. Johnson,* 3rd Dist. Shelby No. 17-08-06, 2008-Ohio-4784, ¶ 4 quoting *State v. Jackson,* 169 Ohio App.3d 440, 2006-Ohio-6059, 863 N.E.2d 223, ¶ 14 (citations omitted). However, in sitting as the thirteenth juror the appellate court should give due deference to the findings made by the jury. *Id.*

**{¶19}** "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends

on its effect in inducing belief.'" (Emphasis omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶20} Furthermore, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *Id.*, at paragraph 4 of the syllabus, citing Ohio Constitution, Article IV, Section 3(B)(3).

*Relevant Statutory Provisions*

{¶21} Appellant was indicted on two counts of Murder, both unclassified felonies, in violation of R.C. 2903.02(A). R.C. 2903.02(A) states, in its pertinent part: "No person shall purposely cause the death of another * * *." R.C. 2903.02(A).

{¶22} Appellant's indictment also contained a firearm specification as to each count. Pursuant to R.C. 2941.141(A), the trial court may impose a mandatory one-year prison term when " * * * the indictment, or the information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense. * * * " R.C. 2941.141(A).

*Analysis*

**{¶23}** In our review of the record, we find that the State provided limited physical evidence connecting Appellant to either Hannah or Frank's murder scenes. However, the State did provide a direct link between the Appellant and a handgun that was used in the murders. Further, the State introduced the statements of Appellant, through various witnesses, linking him to Hannah and Frank's murders. Specifically, Esmeralda Ferguson testified that Appellant confessed to her that "I shot him [Frank] in the head and threw him in the river." (09/27/2016 Tr., Vol. II, at 449). Zachary Deal, an inmate at the Paulding County Jail who shared the same "pod" with Appellant while the case was pending, testified that Appellant confessed to him that he [Appellant] was smoking meth with Frank and Hannah and "he [Appellant] felt disrespected, so he shot Hannah in the head. When Frank turned around and stabbed him [Appellant], he [Appellant] shot him [Frank] in the head, too." (09/28/2016 Tr., Vol. III, at 600).

**{¶24}** Appellant also made statements to law enforcement officers implicating himself in the murders. Paulding County Sheriff's Deputy Robert Garcia interviewed Appellant on March 20, 2016, and testified at trial that Appellant admitted to "putting a gun to Frank's head," in order to scare him. (09/29/2016 Tr. at Vol. IV, at 794). Paulding County Sheriff's Deputy Jonathan Shane Dyson testified that Appellant admitted to having "the taste of blood in his mouth," and to

"the effect of the gunshots" on him (Appellant). (*Id.* at 728). Appellant's admissions made to Deputy Garcia and Deputy Dyson were recorded and played for the jury. (State's Ex. Nos. 44; 41)

{¶25} It is well stated that "the trier of fact is in the best position to observe the credibility of the witnesses and the weight of the evidence." *State v. Craun,* 158 Ohio App.3d 389, 2004-Ohio-4403, 815 N.E.2d 1141, ¶ 23 (3rd Dist.). Thus, in this case the jury's determination of guilt in both murders was based, in part, upon Appellant's statements, which was, upon our independent review of the record, competent and credible evidence of Appellant's involvement.

{¶26} Further, the State provided the jury with Ferguson's handgun, together with the spent shell casing found in the Jeep, which was determined to be the weapon used in the murders. Thus, in our review of the record we cannot say that the jury clearly lost its way by finding Appellant guilty of the two counts of murder with firearm specifications as competent and credible evidence was provided to the jury to support its verdicts. Accordingly, the first assignment of error is overruled.

### *Assignment of Error II*

{¶27} In his second assignment of error, Appellant argues that the trial court erred in denying his Crim.R. 29 motions for acquittal because the State failed to present sufficient evidence to sustain convictions. Specifically, Appellant asserts that the State failed to present any physical evidence connecting Appellant to the

murders in its case-in-chief, and that upon presenting their defense witnesses, the State's case "completely unraveled."  We disagree.

*Standard of Review*

**{¶28}** "When an appellate court reviews the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt."  *State v. Blanton,* 2015-Ohio-4620, 48 N.E.3d 1018, ¶ 29 (3rd Dist.), *cause dismissed,* 145 Ohio St.3d 1420, 2016-Ohio-1173, 47 N.E.3d 165, ¶ 29, citing *State v. Monroe,* 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 47.  "In essence, sufficiency is a test of adequacy."  *Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. "'Whether the evidence is legally sufficient to sustain a verdict is a question of law.'"  *State v. Anders,* 3rd Dist. Hancock No. 5-16-27, 2017-Ohio-2589, ¶ 32, quoting *Thompkins, supra.*

*Analysis*

**{¶29}** In our review of this assignment, we must review the evidence presented in a light most favorable to the prosecution to determine whether any rational trier of fact could have found that the essential elements of each count of murder (and specifications) were proven by the State beyond a reasonable doubt.  In

doing so, the State must present sufficient evidence that the Appellant purposely caused the deaths of Frank and Hannah pursuant to R.C. 2903.02(A), and, at such time, had a firearm on or about his person or under his control.

**{¶30}** In regard to the death of Hannah, the State offered to the jury the testimony of Zachary Deal. Deal testified that the Appellant admitted to him that "he [Appellant] felt disrespected, so he shot Hannah in the head." (09/28/2016 Tr., Vol. III, at 600). Such admission against interest by the Appellant is evidence that the Appellant purposely caused Hannah's death by shooting her in the head that any rational trier of fact could rely upon to convict Appellant of murder with a firearm specification.

**{¶31}** The State also offered into evidence Ferguson's handgun, a spent shell casing from the handgun (found in the back seat of the Jeep), and Hannah's DNA, revealing that Hannah was shot and killed in the Jeep. Kevin Belcik, ("Belcik") a forensic scientist at BCI, examined the casing found in the 2016 Jeep. (*Id.* at 567). Belcik then test fired Ferguson's gun and examined the test samples. (*Id.* at 571). Belcik found that the test fired casing sample from Ferguson's gun was a match to the casing found in the Jeep. (*Id.*). Additionally, blood collected from the passenger seat was consistent with Hannah's DNA profile. (*Id.* at 709, State's Ex. No. 39). As such, as to Hannah's death, we find the evidence presented was legally sufficient to sustain a verdict of guilty to murder with a firearm specification.

{¶32} Regarding the murder of Frank, the State presented the testimonies of Zachary Deal, Esmeralda Ferguson, and Sheriff's Deputies Garcia and Dyson, wherein Appellant confessed his culpability. Zachary Deal testified that Appellant admitted that he "shot [Frank] in the head, too." (*Id.* at 600). Ferguson testified that the Appellant stated that he "shot Frank in the head." (09/27/2016 Tr., Vol. II, at 449). And Deputies Garcia and Dyson testified that Appellant "put a gun to Frank's head" and that Appellant "had the taste of blood in his mouth. (09/29/2016 Tr. at Vol. IV, at 728; 794). Further, Frank's DNA was found on Ferguson's gun which Appellant possessed for only two days before he returned it. Frank's DNA was also found in the driver side seat of the 2016 Jeep. (09/28/2016 Tr., Vol. III, at 707-08).

{¶33} Thus, we find as a matter of law that the prosecution presented legally sufficient evidence to the jury on Frank's murder and the firearm specification through his multiple admissions of guilt and link to the murder weapon. Thus, legally sufficient evidence exists in the record for any rational trier of fact to find that the essential elements of murder (with a firearm) were proven beyond a reasonable doubt in Frank's murder and the second assignment of error is overruled.

*Assignment of Error III*

{¶34} In his third assignment of error, Appellant asserts that the trial court erred by failing to instruct the jury on lesser included offenses or lesser degrees of murder. Specifically, Appellant asserts that the trial court erred by refusing to give

the jury an instruction on the lesser included offenses of reckless homicide and voluntary manslaughter.

**{¶35}** Appellant contends that the testimony concerning his use of Ferguson's gun established that he only intended to scare Frank, not kill him, or in the alternative, that the trial court should have given an instruction on voluntary manslaughter, because the Appellant acted under the influence of sudden passion or in a sudden fit of rage, brought on by the serious provocation of the victim. For the reasons that follow, we find Appellant's arguments under this assignment are without merit.

*Standard of Review*

**{¶36}** "It is well-established that a trial court has broad discretion in instructing the jury." *State v. Smith,* 10th Dist. Franklin No. 01AP-848, 2002-Ohio-1479, *2, citing *Jenkins v. Clark,* 7 Ohio App.3d 93, 100, 454 N.E.2d 541 (2nd Dist.1982). However, "[t]he court must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder." *State v. Joy,* 74 Ohio St.3d 178, 181, 1995-Ohio-259, 657 N.E.2d 503 citing *State v. Comen,* 50 Ohio St.3d 206, 210, 553 N.E.2d 640 (1990).

**{¶37}** "'In reviewing the sufficiency of jury instructions given by a trial court, the proper standard of review . . . is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and

circumstances of the case.'" *State v. Thompson,* 3rd Dist. Henry No. 7-16-10, 2017-Ohio-792, ¶ 11, quoting *Schnipke v. Safe-Turf Installation Group, L.L.C.,* 190 Ohio App.3d 89, 2010-Ohio-4173, 940 N.E.2d 993, ¶ 30.  An abuse of discretion connotes more than a mere error of law or an error in judgment.  It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court.  *State v. Adams,* 62 Ohio St.2d, 151, 157, 404 N.E.2d 144 (1980).

*Reckless Homicide Jury Instruction*

**{¶38}** R.C. 2903.041(A) states: "no person shall recklessly cause the death of another * * *."  R.C. 2903.041(A).  Reckless homicide may be a lesser included offense of murder.  *State v. Day*, 8th Dist. Cuyahoga No. 83138, 2004-Ohio-1449, ¶ 47.  "Recklessly" under R.C. 2901.22(C) is defined as follows:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C).  Appellant asserts, while completely denying the murder charges, even if something *did* happen the greatest charge he could be convicted of was reckless homicide, because testimony indicated that Appellant only wanted to scare Frank, not kill him.  Therefore, Appellant contends that the trial court abused its'

discretion by denying him the reckless homicide instruction. We find this argument to be without merit.

**{¶39}** As an initial matter, we note that the Ohio Supreme Court has held that a defendant does not have the right to control whether a jury receives instructions on lesser included offense. *State v. Wine,* 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 17. Rather, the law, evidence presented, and the discretion of the trial judge play a role in whether lesser-included offense jury instructions are appropriate. *Id.* at ¶ 21.

**{¶40}** In our review of the record, the evidence does not support that Appellant's shootings of Hannah and Frank were done recklessly. Granted, Appellant may have borrowed Ferguson's gun to scare Frank, but the autopsies and testimony support that the Appellant shot Hannah at point blank range and shot Frank in the back of the head. Dr. Diane Scala-Barnett ("Dr. Scala-Barnett") of the Lucas County Coroner's Office, performed the autopsy of Frank on March 16, 2016 and testified that Frank died as a result of a single gunshot wound to the back of the head. (09/28/2016 Tr., Vol. III, at 493, 495). Dr. Jeffrey Hudson ("Dr. Hudson") of the Lucas County Coroner's Office, performed the autopsy of Hannah on February 11, 2016 and testified that Hannah died as a result of a gunshot wound to the left side of her forehead/temple. (*Id.* at 509-10). These findings, coupled with Zachary Deal's testimony that Appellant admitted to shooting both Hannah and

Frank in the head because he felt "disrespected," support that the trial court was not unreasonable in failing to instruct the jury on reckless homicide. (09/28/2016 Tr., Vol. III, at 600). Accordingly, Appellant's assertion that the trial court should have instructed the jury on reckless homicide is without merit.

*Voluntary Manslaughter Jury Instruction*

{¶41} Voluntary Manslaughter is an inferior degree offense to murder. *See generally, State v. Manley,* 3rd Dist. Allen No. 1-01-159, 2002-Ohio-5582, ¶ 10. A defendant may mitigate a charge of murder to manslaughter if "the defendant establishes the mitigating circumstances of *sudden* passion or a sudden fit of rage in response to serious provocation by the victim sufficient to incite the defendant to use deadly force." (Emphasis added). *Id.* A defendant is entitled to a jury instruction on voluntary manslaughter where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the inferior degree offense. *Id.* When determining whether an instruction on an inferior degree of murder should have been given, the same test for whether an instruction on a lesser-included offense should have been given is utilized. *State v. Shane,* 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992).

{¶42} In our review of the record, we find that the evidence does not support the jury being instructed on voluntary manslaughter. Appellant argues that Frank's act of placing an unloaded gun to his (Appellant's) head and pulling the trigger is

an act sufficient to incite a sudden passion or sudden fit of rage justifying him in shooting both Frank and Hannah in the head. This argument lacks reason under the facts presented.

{¶43} In making his "sudden fit of rage" argument, Appellant ignores the "sudden" requirement set forth in the voluntary manslaughter statute. Testimony at trial revealed that the incident (wherein Frank put a gun to Appellant's head) occurred sometime in mid-January, 2016. (09/29/16 Tr., Vol. IV, at 793, State's Ex. 44). However, evidence presented at trial established that Frank and Hannah were murdered in early February, 2016, more than two weeks after the incident. (09/28/2016 Tr., Vol. III, at 516). Thus, the passage of time between Frank's scaring of Appellant and Appellant's retaliation resolves this argument.

{¶44} The Ohio Supreme Court held in *State v. Mack,* "[p]ast incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off." *State v. Mack,* 82 Ohio St.3d 198, 201, 1998-Ohio-375, 694 N.E.2d 1328, citing *State v. Huertas,* 51 Ohio St.3d 22, 31-32, 553 N.E.2d 1058 (1990). In determining what constitutes a sufficient time for cooling off, it has been consistently held that the cooling off period is a very short time span. *E.g., State v. Kanner,* 7th Dist. Monroe No. 04 MO 10, 2006-Ohio-3485, ¶ 28 (in examining what constitutes an adequate "cooling off" time span, the court recited case law from different districts that held anything from the few seconds it takes to

reload a gun to the time it takes to drive home and retrieve a weapon is a sufficient "cooling off" period).

{¶45} Accordingly, because Appellant had sufficient time to "cool off" from the January incident with Frank, we are unpersuaded that an instruction on voluntary manslaughter was appropriate. Thus, we find that the trial court did not abuse its discretion by refusing to give an instruction on voluntary manslaughter and we overrule Appellant's third assignment of error.

### *Assignment of Error IV*

{¶46} In his fourth assignment of error, Appellant contends that the trial court erred by not instructing the jury on self-defense. Appellant asserts that because the evidence supported that Appellant was afraid of Frank after Frank put an unloaded gun to his head, the trial court should have instructed the jury on self-defense.

{¶47} Self-defense is an affirmative defense. *State v. Martin,* 21 Ohio St.3d 91, 93, 488 N.E.2d 166 (1986). "R.C. 2901.05(C)(2) defines an affirmative defense as '[a] defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence.'" *Id.* The burden of proving an affirmative defense, by a preponderance of the evidence, is on the defendant. *Id. See generally, State v. Smith,* 3rd Dist. Logan

No. 8-12-05, 2013-Ohio-746, ¶ 16 (listing the elements that a defendant must show to establish a claim of self-defense).

**{¶48}** To prove a claim of self-defense, a defendant must establish, by a preponderance of the evidence, the following: "(1) that he was not at fault in giving rise to the affray, (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of such force, and (3) that he did not violate any duty to retreat or avoid the danger." *State v. Jackson,* 22 Ohio St.3d 281, 282, 490 N.E.2d 893 (1986). "Preponderance of the evidence" means the greater weight of the evidence. *Dawson v. Anderson,* 121 Ohio App.3d 9, 13, 698 N.E.2d 1014 (10th Dist.1997).

**{¶49}** At the outset, we note that Appellant failed to request a jury instruction for self-defense. "The failure to raise an issue at trial acts as a waiver of the issue on appeal except for plain error." *Deutsche Bank Natl. Trust Co. v. Sopp,* 2016-Ohio-1402, 62 N.E.3d 863, ¶ 8 (10th Dist.) citing *Cleveland v. Ellsworth,* 8th Dist. Cuyahoga No. 83040, 2004-Ohio-4902, ¶ 8. "'Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'" *State v. Long,* 53 Ohio St.2d 91, 94, 372 N.E.2d 804 (1978) quoting Crim.R. 52(B). Plain error should be applied cautiously and only in exceptional circumstances. *Id.* Plain error should be applied only to avoid a clear miscarriage

of justice, and but for the error, the outcome of the trial clearly would have been otherwise. *Id.* at 97.

**{¶50}** In our review of the record, Appellant has not established that "the outcome of the trial clearly would have been otherwise" had the trial court given an instruction on self-defense. We find that there is *no evidence* in the record to support Appellant's argument that a situation involving the need for self-defense arose at or near the time of Frank and Hannah's murders. Not only has Appellant failed to provide us with evidence of plain error, he also failed to establish by a preponderance of the evidence that he acted in self-defense by shooting Frank and/or Hannah. Accordingly, we overrule Appellant's fourth assignment of error.

*Assignment of Error V*

**{¶51}** In Appellant's fifth assignment of error, Appellant asserts that the trial court erred in not considering or ruling on his request for new trial counsel. Appellant asserts that prior to trial, there was a complete breakdown in his attorney-client relationship, and as a result his trial counsel should have been replaced. Appellant also asserts that he sent letters to the trial court relative to the breakdown, and the trial court erred by failing to rule on Appellant's request. We disagree.

*Standard of Review*

**{¶52}** "'An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution

of counsel.'" *State v. Cowans,* 87 Ohio St.3d 68, 72, 1999-Ohio-250, 717 N.E.2d 298, quoting *United States v. Iles,* 906 F.2d 1122, 1130 (6th Cir.1990). "'[T]he trial judge may * * * [deny the requested substitution and] require the trial to proceed with assigned counsel participating if the complaint * * * is unreasonable.'" *Id.* at 72, 73, quoting *State v. Deal,* 17 Ohio St.2d 17, 244 N.E.2d 742 (1969), syllabus. "The trial court's decision is reviewed under an abuse of discretion standard." *Id.*

{¶53} "Under an abuse of discretion standard, a lower court's decision will not be reversed for mere error, but only when the court's decision is unreasonable, arbitrary, or unconscionable." *Morrow v. Becker,* 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 9. Given that the abuse of discretion standard is a deferential review, "[i]t is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by countervailing arguments." *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14. If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion. *Middendorf v. Middendorf,* 82 Ohio St.3d 397, 401, 1998-Ohio-403, 696 N.E.2d 575.

{¶54} "'Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the

conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.'" *State v. Beadle,* 3rd Dist. Hancock No. 5-13-08, 2013-Ohio-5659, ¶ 17, quoting *State v. Jones,* 91 Ohio St.3d 335, 342, 2001-Ohio-57, 744 N.E.2d 1163.

*Analysis*

**{¶55}** While Appellant asserts that the trial court abused its discretion in not ruling on Appellant's motion, Appellant has provided no record of his handwritten letters for us to review. Other than the assertion that he wrote letters to the trial court requesting new counsel, and one reference to the sentencing transcript that indicated that he was not happy with his trial counsel (after being convicted of two counts of Murder), the record before us is void of any evidence to support this assignment of error.

**{¶56}** In essence, Appellant offers no support, either legal or factual, for his assertion that the trial court erred by failing to replace his trial counsel or rule on his handwritten requests. "'The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment is based * * *.'" *Gianetti v. Teakwood, Ltd.,* 10th Dist. Franklin No. 15AP-413, 2016-Ohio-213, ¶ 30 quoting App.R.12(A)(2). "'It is the duty of the appellant, not the appellate court, to construct the legal arguments necessary to support the appellant's assignments of error.'" *Id.* quoting *Bond v. Canal*

*Winchester,* 10th Dist. Franklin No. 07AP-556, 2008-Ohio-945, ¶ 16. As it is not this court's duty to search the record for some evidence related to his handwritten motions to support Appellant's argument, we conclude our analysis and overrule Appellant's fifth assignment of error.

*Assignment of Error VI*

**{¶57}** Lastly, Appellant contends that he was denied the effective assistance of counsel, because Appellant did not believe that his attorneys were giving him an adequate defense. Appellant further asserts that he disagreed with his defense counsel's strategy, which resulted in a breakdown of the attorney-client relationship and their "nearly non-existent" communication. Finally, Appellant criticizes his defense counsel's performance at trial as being ineffective. We disagree with Appellant that he was denied effective assistance of counsel.

*Standard of Review*

**{¶58}** "'When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that the counsel's representation fell below an objective standard of reasonableness.'" *State v. Sanders,* 94 Ohio St.3d 150, 151, 2002-Ohio-350, 761 N.E.2d 18 quoting *Strickland v. Washington,* 466 U.S. 668, 687-88, 104 S. Ct. 2052 (1984). Additionally, "'[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceedings would have been different.'" *Id.,* at 694. *See also, State v. Bradley,* 42 Ohio St.3d 136, 137, 538 N.E.2d 373 (1989).

{¶59} In analyzing a claim for ineffective assistance of counsel, this court's scrutiny of counsel's performance must be highly deferential, with a "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bradley, supra,* at 142, quoting *Strickland, supra,* at 687-88. "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *Id.*

*Analysis*

{¶60} We again begin our analysis noting that Appellant reiterates his arguments from his previous assignments of error with the notion that his trial counsel's performance was deficient. However, Appellant cannot direct us to any specific instance in the record to support that his counsels' representation fell below an objective standard of reasonableness.

{¶61} Thus, the specific complaints Appellant makes in this assignment of error are unpersuasive. Each of the alleged deficiencies – spending too little time with Appellant for trial preparation, not requesting jury instructions on self-defense and voluntary manslaughter, and the fact that the trial court had to remind

Appellant's counsel to make Crim.R. 29 motions, standing alone and together, fall "'within the wide range of reasonable professional assistance.'" *State v. Bradley,* 42 Ohio St.3d 136, 143-44, 538 N.E.2d 373 (1989) quoting *Strickland, supra.*

{¶62} Contrary to Appellant's arguments, the record is replete with examples of his trial counsel providing reasonable representation. For example, Appellant's trial counsel successfully limited Appellant's statements to law enforcement officers through a motion in limine. (08/27/2016 Tr., Vol. II, at 226). Further, Defense counsel presented two fact witnesses on Appellant's behalf at trial. (09/29/2016 Tr., Vol. IV, at 823; 842). Additionally, Appellant's counsel filed numerous pretrial motions including: a Motion for Appropriation of Investigator Funds; a Motion in Limine Regarding Statement of Defendant; a Motion for Defendant to Appear in Street Clothes; and a Motion to Prohibit Expressive Clothing by Courtroom Spectators. (Doc. Nos. 20, 63, 64, 87).

{¶63} In our review of the record, we find that Appellant's trial counsel acted within a reasonable degree of professional representation, and as such, we find Appellant's argument regarding ineffective assistance is without merit.

{¶64} Accordingly, Appellant's sixth assignment of error is overruled.

{¶65} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**