[Cite as *State v. Dayton*, 2019-Ohio-2635.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

SEAN M. DAYTON,

    DEFENDANT-APPELLANT.

CASE NO. 13-18-41

O P I N I O N

Appeal from Seneca County Common Pleas Court
Trial Court No. 18 CR 0114

Judgment Affirmed

Date of Decision:  July 1, 2019

APPEARANCES:

    *Jennifer L. Kahler* for Appellant

    *Angela M. Boes* for Appellee

**WILLAMOWSKI, J.**

{**¶1**} Defendant-appellant Sean M. Dayton ("Dayton") appeals the judgment of the Seneca County Court of Common Pleas, alleging that his conviction for attempted grand theft was against the manifest weight of the evidence; that his convictions for safecracking and possession of criminal tools were not supported by sufficient evidence; and that the jury instructions at trial should have included the lesser included offense of criminal damaging. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{**¶2**} Jacqueline Brezina ("Brezina") is employed as a teller at First National Bank in New Riegel, Ohio and lives across the street from the branch at which she works. Tr. 116-117. On May 26, 2018 at 5:29 A.M., Brezina was at home and was awakened by the sound of a "loud banging." Tr. 117. She went to her front window where she saw a dark minivan that had its hatch open. Tr. 117. The minivan was next to a freestanding ATM that was located on the sidewalk outside of the bank. Tr. 118-119, 215. One person was sitting in the driver's seat of the minivan while another person was standing outside of the minivan and using what appeared to be a "crow bar" to strike the ATM repeatedly. Tr. 118, 134.

{**¶3**} Brezina said she heard a "shattering" sound as the person repeatedly struck the ATM. Tr. 122. She could not identify either of these individuals because their faces were covered in "dark clothing" at this time. Tr. 119. Suddenly, after

-2-

another vehicle approached the ATM, the person striking the ATM "jumped in the back" of the minivan, and the minivan sped away. Tr. 122. Brezina testified that she heard the sound of chains rattling as the minivan pulled away. Tr. 123. At this point, Brezina called 9-1-1 and then called her supervisor. Tr. 124. While Brezina was on the phone, she began to hear the sounds of sirens approaching. Tr. 125, 129.

{¶4} Deputy Richard Best ("Deputy Best"), who works for the Seneca County Sherriff's Office, received a dispatch at 5:29 A.M on May 29, 2018 that indicated an incident was occurring at First National Bank. Tr. 137. When he arrived at the bank, he saw a dark minivan and observed that the ATM had sustained "heavy damage." Tr. 139. At this point, "the driver of the van looked directly at [Deputy Best] and then [took] off * * * at a high rate of speed." Tr. 140. Deputy Best then began pursuit of the minivan with his lights and siren activated. Tr. 139-140. At this time, Deputy Best observed that the hatch of the van was open and that the van was dragging "a large log chain." Tr. 140. The chain appeared to be attached to the rear axle of the minivan. Tr. 140.

{¶5} During this pursuit, the minivan reached speeds of one hundred miles per hour. Tr. 141. Deputy Best radioed for assistance from the Ohio State Patrol and the Fostoria Police Department. Tr. 141. Responding to a call for assistance, Officer Eric England ("Officer England"), a patrolman with the Tiffin Police Department, set up spike strips on a road that the minivan was reportedly headed towards. Tr. 244. The minivan ran over the spike trips, which punctured all four of

the minivan's tires. Tr. 252. Officer England, at this time, did not observe the driver of the minivan make an attempt to stop his vehicle. Tr. 263. Rather, the minivan continued to drive away from Deputy Best, who continued the pursuit. Tr. 148-150.

{¶6} After one of its tires came off, the minivan came to a stop. Tr. 150. The driver and passenger were apprehended at this time. Tr. 152. The driver was later identified as Dayton. Tr. 152, 250. During the course of their investigation, the police determined that the minivan belonged to Dayton's mother. Tr. 165. On June 13, 2018, Dayton was indicted for one count of attempted grand theft in violation of R.C. 2913.02(A); one count of safecracking in violation of R.C. 2911.31(A); one count of fleeing or eluding a police officer in violation of R.C. 2921.331(B); and one count of possession of criminal tools in violation of R.C. 2923.24(A). Doc. 2. This case proceeded to trial on November 26, 2018. Tr. 1.

{¶7} At trial, the State introduced the ATM surveillance video. Ex. 1. Tr. 219. In the video, the minivan pulls up beside the ATM. Ex. 1. Dayton's accomplice can be seen getting out of the minivan, bending over near the ATM, and moving around the base of the machine, though what precisely he was doing was out of the view of the video camera. Ex. 1. The accomplice then steps aside while Dayton can be seen pulling the minivan forward several times. Ex. 1. Tr. 234. As the minivan pulls forward, the image in the surveillance video lurches as though the ATM is moving. Ex. 1. The minivan then stops, and Dayton's accomplice brings a sledgehammer towards the ATM and strikes the machine repeatedly. Ex. 1.

Shortly thereafter, the accomplice gets into the minivan, and Dayton drives away from the scene. Ex. 1.

{¶8} At trial, Brezina, Deputy Best, and Officer England testified. Tr. 116, 135, 240. During his testimony, Deputy Best testified that he and several other officers examined the minivan after Dayton and his accomplice had been apprehended. Tr. 157. He stated the police discovered black stocking caps, a black duffel bag, black rubber gloves, knives, hatchets, and "an eight-pound, full-sized sledge hammer" in the back of the minivan. Tr. 157-158. He also testified that, at this time, the log chain was still attached to the rear axle of the minivan. Tr. 158, 183. On cross examination, Deputy Best stated that the ATM was damaged as he drove past the bank in pursuit of Dayton. Tr. 177. However, he also testified that he did not witness Dayton and his accomplice using the log chain in an attempt to pull the ATM free from its mounting. Tr. 178-179.

{¶9} Dean Keller ("Keller"), the president of First National Bank, also testified about the damage that was done to the ATM. Tr. 211. He stated that the front of the ATM has a large screen under which is a "safe door." Tr. 222-223. This "safe door" is where money is dispensed from the ATM and, thus, provides direct access to the vault. Tr. 221. Keller also pointed to the fact that the "safe door" was "extreme[ly]" damaged but that the screen was not damaged. Tr. 223. He further stated that the ATM could not be repaired because the damage to it was too extensive. Tr. 224. He then testified that the replacement cost of the ATM was

$26,000.00 and that the ATM contained funds of $22,320.00 on the morning of May 26, 2018. Tr. 225. Further, Keller authenticated surveillance footage from the bank's security cameras that was then admitted into evidence. Tr. 219.

{¶10} After the State's case-in-chief, the Defense made a Crim.R. 29 motion for acquittal as to each of the counts charged against Dayton. Tr. 279. The trial court denied the Defense's Crim.R. 29 motion. Tr. 284. The Defense then objected to the jury instructions, arguing that a statement on the lesser included offense of criminal damaging should be included. Tr. 292. The trial court denied this request. Tr. 294. On November 27, 2018, the jury found Dayton guilty of all four counts charged against him. Doc. 29. The trial court then proceeded immediately to sentencing and subsequently entered its judgment entry of sentencing on November 28, 2018. Tr. 373. Doc. 31.

{¶11} Dayton filed his notice of appeal on December 18, 2018. Doc. 33. On appeal, appellant raises the following assignments of error:

### First Assignment of Error

**Appellant's conviction of attempted grand theft was against the manifest weight of the evidence.**

### Second Assignment of Error

**There was insufficient evidence presented at trial to support appellant's conviction for safecracking.**

**Third Assignment of Error**

**There was insufficient evidence presented at trial to support appellant's conviction for possession of criminal tools.**

**Fourth Assignment of Error**

**It was reversible error for the trial court to deny appellant's request to include criminal damaging in the jury instructions.**

*First Assignment of Error*

{¶12} Dayton claims (1) that the evidence does not show that he "intended to steal the ATM" and (2) that the evidence shows that he "voluntarily left [the ATM] empty handed," indicating that he renounced his criminal purpose. Appellant's Brief, 9-10. Based on these arguments, Dayton argues that his conviction for attempted grand theft is against the manifest weight of the evidence.

Legal Standard

{¶13} In a manifest weight analysis, "an appellate court's function * * * is to determine whether the greater amount of credible evidence supports the verdict." *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 73 (3d Dist.). Thus, "the appellate court sits as a 'thirteenth juror' * * *." *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Appellate courts

> **must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest**

> **miscarriage of justice that the conviction must be reversed and a
> new trial ordered.'**

*State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 36 (3d Dist.), quoting

*Thompkins* at 387.

{¶14} "A reviewing court must, however, allow the trier of fact appropriate

discretion on matters relating to the weight of the evidence and the credibility of the

witnesses." *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 38 (3d Dist.),

quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "[I]t

is well established that the * * * credibility of the witnesses [is] primarily a matter

for the trier of fact." *State v. Gervin*, 2016-Ohio-8399, 79 N.E.3d 59, ¶ 142 (3d

Dist.), quoting *State v. Clark*, 101 Ohio App.3d 389, 409, 655 N.E.2d 795 (8th

Dist.1995). "Only in exceptional cases, where the evidence 'weighs heavily against

the conviction,' should an appellate court overturn the trial court's judgment." *State

v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*,

131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

{¶15} In order to prove the crime of attempted grand theft, the State must

introduce evidence that the defendant (1) knowingly attempted (2) to "obtain or

exert control over * * * property or services" worth more than $7,500.00 but less

than $150,000.00 (3) "without the consent of the owner or person authorized to give

consent" and (4) "with [the] purpose to deprive the owner" thereof. R.C.

2913.02(A)(1), (B)(2); R.C. 2923.02(A), (E)(1). In order to establish the attempt

element, the State had to provide evidence that the defendant took a "substantial step in a course of conduct planned to culminate in the commission of the crime." *State v. Potts*, 2016-Ohio-5555, 69 N.E.3d 1227, ¶ 48 (3d Dist.), quoting *State v. Hoffert*, 1st Dist. Hamilton No. C-020168, 2002-Ohio-6343, ¶ 9.

### Legal Analysis

{¶16} At trial, Officer England testified that, at the time that Dayton was apprehended, his mother's minivan had a log chain attached to its rear axle. Tr. 252. Deputy Mark Lawson ("Deputy Lawson") of the Seneca County Sheriff's office also testified that there were skid marks on the pavement beside the ATM. Tr. 207-208. On cross-examination, Deputy Lawson admitted that these "burnout" marks could have been caused by the minivan speeding away from the bank or by "somebody putting a chain around [the] ATM and trying to drive away." Tr. 208.

{¶17} The State then introduced the ATM surveillance video. Tr. 219. Ex. 1. On the video, Dayton pulls his mother's minivan up next to the ATM. Ex. 1. Dayton's accomplice can then be seen bending over and moving around the base of the ATM before he stands back as the minivan lurches forward multiple times. Tr. 234. Ex. 1. Keller then testified that the ATM had been examined as part of the servicing process. Tr. 226. This examination revealed that the ATM's mounting had been loosened, though the ATM had not broken free from the sidewalk. Tr. 227. The ATM also had scratches around its base and "appeared" as though "a chain had been wrapped around it." Tr. 227.

**{¶18}** Further, the surveillance video showed that Dayton's accomplice struck the ATM multiple times with what appeared to be a sledgehammer. Tr. 173. Ex. 1. Brezina similarly witnessed someone repeatedly striking the ATM with a tool. Tr. 118. The damage was restricted to the front door of the ATM. Ex. 21, 24-28. Dayton and his accomplice did not inflict any damage to the control panel or the screen of the ATM. Tr. 223. Keller testified that this front door provided access to the $23,320.00 contained in the ATM machine. Ex. 1. Tr. 225. The efforts of Dayton's accomplice indicate that this series of events was directed at obtaining the funds contained in the ATM. Thus, a reasonable juror could find, from the evidence presented at trial, that Dayton took a "substantial step in a course of conduct planned to culminate" in the offense of grand theft. *Plott, supra*, ¶ 48, quoting *Hoffert, supra*, ¶ 9.

**{¶19}** Dayton claims that the evidence at trial shows that he "voluntarily left [the ATM] empty handed" and, in so doing, abandoned any attempt to commit grand theft. Dayton points to R.C. 2923.02(D), which reads as follows:

> **It is an affirmative defense to a charge under this section that the actor abandoned the actor's effort to commit the offense or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of the actor's criminal purpose.**

R.C. 2923.02(D). We begin our analysis of this argument by noting that Dayton did not assert this affirmative defense at trial. *See State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978) (holding that, "in order for the defendant to successfully

raise an affirmative defense, '* * * evidence of a nature and quality sufficient to raise the issue must be introduced * * *.'"); *State v. Jarrells*, 3d Dist. Auglaize No. 2-99-22, 2000 WL 141259, *4 (Feb. 7, 2000). Nonetheless, we will examine the record to determine whether any evidence suggests that Dayton abandoned his effort to commit the crime of grand theft.

{¶20} At trial, Brezina stated that she saw a person striking the ATM repeatedly. She then testified that she heard "somebody say, go, go, go. And that's when the one outside of the ATM jumped in the back, back of the van and then they drove off." Tr. 122. Brezina then "saw another car pull up to the intersection" as they drove away. Tr. 122. She subsequently heard sirens and saw a police car pursuing the minivan. Tr. 125. The Defense did not introduce any evidence that suggested Dayton had another intention in leaving the ATM.

{¶21} Under Ohio law, abandonment is not voluntary or complete "[w]here [the defendant] abandons an attempted crime because he fears detection or realizes that he cannot complete the crime." *State v. Marcum*, 5th Dist. Licking No. 10-CA-0137, 2011-Ohio-3100, ¶ 75, citing *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), paragraph one of the syllabus, overruled on other grounds by *State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140 (1977), vacated "insofar as it leaves undisturbed the death penalt[y] imposed" by *Woods v. Ohio*, 98 S.Ct. 3133, 438 U.S. 910, 57 L.Ed.2d 1153 (1978). For these reasons, we find this argument to be without merit.

**{¶22}** After reviewing the evidence in the record and considering its weight and credibility, we conclude that competent, credible evidence exists to substantiate each of the essential elements of the crime of attempted grand theft. Further, the record does not contain evidence indicating that the jurors lost their way and returned a verdict against the manifest weight of the evidence. For these reasons, Dayton's first assignment of error is overruled.

*Second Assignment of Error*

**{¶23}** Dayton argues that the State failed to establish that he tampered with or entered the vault that was contained with the ATM machine. For this reason, he asserts that his conviction for safecracking was not supported by sufficient evidence and that the trial court erred in denying his Crim.R. 29 motion.

Legal Standard

**{¶24}** A challenge to the sufficiency of the evidence supporting a conviction "is a question of law and a 'test of adequacy rather than credibility or weight of the evidence.'" *State v. Beaver*, 3d Dist. Marion No. 9-17-37, 2018-Ohio-2438, ¶ 40, quoting *State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19. The applicable standard

> **is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.**

*State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 8, quoting *Plott*, *supra*, ¶ 73.

**{¶25}** In order to establish the crime of safecracking, the State must introduce evidence that the defendant (1) "knowingly enter[ed], force[d] an entrance into, or tamper[ed] with any vault, safe, or strongbox" (2) "with purpose to commit an offense." R.C. 2911.31(A).

Legal Analysis

**{¶26}** Dayton claims that, while the ATM contains a vault, the ATM is not a vault. Thus, he may have tampered with the exterior of the ATM, but he never tampered with the actual vault. However, Keller testified that the ATM was a vault. Tr. 221. *See State v. Jackson*, 12th Dist. Butler No. CA2011-06-096, 2012-Ohio-4219, ¶ 52 (finding "that an ATM can be classified as a 'safe' under R.C. 2911.31 as an ATM is a receptacle which purpose is to dispense money to customers and to keep the money inside the ATM safe.").

**{¶27}** At trial, the prosecution introduced evidence that indicated the minivan that Dayton was driving had a log chain attached to its rear axle. Tr. 123, 140, 208, 252. The surveillance video showed that Dayton's accomplice was making movements around the base of the ATM. Ex. 1. Dayton's accomplice then stepped aside while Dayton pulled his mother's minivan forward several times. Ex. 1. Keller testified at trial that the ATM had scratch marks on the sides of the ATM that were consistent with a chain having been wrapped around the base of the

machine before the chain was pulled. Tr. 234-235. Keller also testified that the ATM was loose on its mounting. Tr. 228-229.

{¶28} After examining the evidence in a light most favorable to the prosecution, we conclude that the State provided evidence for each of the essential elements of the crime of safecracking. Based on the testimony at trial, a rational trier of fact could have found that Dayton had tampered with a vault. *See State v. Richardson*, 12th Dist. Clermont No. CA2012-06-043, 2013-Ohio-1953, ¶ 13 (holding that "'[t]amper' has been defined as 'to meddle so as to alter,' 'to make changes that are illegal, corrupting, or perverted,' or 'to interfere improperly.'"). Thus, Dayton's conviction for safecracking is supported by sufficient evidence. For these reasons, Dayton's second assignment of error is overruled.

*Third Assignment of Error*

{¶29} Dayton claims that the State did not provide evidence that he possessed the tools found in his mother's minivan with the intent to commit a felony. For this reason, he argues that his conviction for possession of criminal tools is not supported by sufficient evidence.

Legal Standard

{¶30} We herein reincorporate the sufficiency-of-the-evidence standard set forth under the second assignment of error. In order prove the crime of possession of criminal tools, the State must introduce evidence that the defendant (1)

"possess[ed]" (2) "any substance, device, instrument, or article" (3) "with purpose to use it criminally." R.C. 2923.24(A).

Legal Analysis

{¶31} At trial, Brezina testified that she witnessed someone striking an ATM with a tool that appeared, from her vantage point, to be a "crowbar." Tr. 118. In the surveillance video, Dayton's accomplice can be seen hitting the ATM with a sledgehammer. Ex. 1. Tr. 173. After Dayton was apprehended, the minivan he was driving was found to contain a sledgehammer. Ex. 4, 34.

{¶32} Further, the minivan was also discovered with a log chain attached to its rear axle. Tr. 252. Though the surveillance video did not capture an image of the log chain in use, the ATM had scratch marks around the base that were consistent with a chain being wrapped around the machine. Tr. 234. The minivan was also lurching forward multiple times in the surveillance video. Ex. 1. Tr. 234.

{¶33} Brezina also testified that she saw the driver and his accomplice were wearing dark clothing that covered their faces and that this clothing prevented her from being able to identify either of these individuals. Tr. 119, 129. At the time that Dayton was apprehended, the police discovered ski masks, gloves, and other articles of dark clothing. Tr. 162, 169. Ex. 35, 36, 38, 39, 41.

{¶34} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable trier of fact could have found that Dayton possessed these tools for a criminal purpose. In this case, the State introduced some evidence to

substantiate each of the essential elements of the crime of possession of criminal tools. Thus, his conviction for possession of criminal tools is supported by sufficient evidence. Dayton's third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶35}** Dayton argues that the trial court erred by denying his request to include an instruction on criminal damaging as a lesser included offense of the crime of safecracking in the jury instructions.

Legal Standard

**{¶36}** "As an initial matter, we note that the Ohio Supreme Court has held that a defendant does not have the right to control whether a jury receives instructions on lesser included offense." *State v. Gillespie*, 3d Dist. Paulding No. 11-16-07, 2017-Ohio-6936, ¶ 39.

> **The lesser-included-offense instruction is not warranted every time 'some evidence' is presented to support the lesser offense. [*State v. Trimble*, 122 Ohio St.3d 297, 911 N.E.2d 242, 2009-Ohio-2961,] ¶ 192 citing *State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992). "Rather, a court must find 'sufficient evidence' to 'allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense.'" (Emphasis sic.) *Trimble* at ¶ 192 quoting *Shane* at 632-633, 590 N.E.2d 272. In making this determination, the court must view the evidence in the light most favorable to the defendant. *Trimble* at ¶ 192; *State v. Timmons*, 10th Dist. Franklin No. 13AP-1038, 2014-Ohio-3520, ¶ 37.**

*State v. Simonis*, 3d Dist. Seneca No. 13-14-05, 2014-Ohio-5091, ¶ 33. "In determining whether lesser-included-offense instructions are appropriate, 'the trial

court must view the evidence in the light most favorable to the defendant.'" *State v. Singh*, 3d Dist. Logan No. 8-15-04, 2015-Ohio-4130, ¶ 5, quoting *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N .E.3d 1207, ¶ 21.

**{¶37}** "It is well-established that a trial court has broad discretion in instructing the jury." *Gillespie* at ¶ 36, quoting *State v. Smith*, 10th Dist. Franklin No. 01AP-848, 2002 WL 484927, *2 (April 2, 2002). Thus, an appellate court will not reverse a trial court's decision not to instruct the jury on a lesser included offense absent an abuse of discretion. *Potts*, *supra*, at ¶ 65. "An abuse of discretion is not merely an error of judgment." *Sullivan*, *supra*, at ¶ 20. "Rather, an abuse of discretion is present where the trial court's decision was arbitrary, unreasonable, or capricious." *State v. Howton*, 3d Dist. Allen No. 1-16-35, 2017-Ohio-4349, ¶ 23. When the abuse of discretion standard applies, an appellate court is not to substitute its judgment for that of the trial court. *State v. Thompson*, 2017-Ohio-792, 85 N.E.3d 1108, ¶ 11 (3d Dist.).

## Legal Analysis

**{¶38}** In this case, the Defense requested that the jury be instructed on criminal damaging as a lesser included offense of safecracking. Tr. 292-293. Dayton asserted that the jury could have found that he only intended to vandalize the ATM and that he did not have the intent to commit theft. However, Dayton does not, on appeal, identify any evidence in the record that indicates that he merely

intended to damage the ATM. The trial court, on the other hand, gave its rationale for denying this requested jury instruction, stating:

> **The Court is of the opinion, based upon the testimony and evidence presented in this case, that criminal damaging is not an instruction that this Court will give in this case. The core of criminal damaging is more of a damage to property. Based upon the evidence submitted in this case, it is clear that the Defendant and his accomplice were attempting to commit the offense of theft. Just the exhibits in this case, the photographs clearly indicate that they were not trying to damage the ATM machine. They were trying to break into it to steal the money. \* \* \* And, therefore, this Court is of the opinion that based upon the testimony and evidence that the damage to the ATM was specifically for purposes of attempting to commit the theft offense in this case. So stealing the money.**

Tr. 294-295.

{¶39} The evidence in the record supports the trial court's analysis and indicates that Dayton tampered with the ATM in an attempt to commit the offense of grand theft. *See* R.C. 2911.31(A). The State introduced evidence that Dayton and his accomplice in the surveillance video were attempting to pull the ATM off its base. Further, Dayton's accomplice did cause severe damage to the ATM by repeatedly striking the machine. However, Keller testified that the damage was confined to the front door of the ATM that provided access to the funds in the machine. The other parts of the ATM, such as the screen and keypad, were unscathed. This evidence does not suggest that this series of actions was undertaken merely to damage the ATM.

{¶40} Regardless of whether criminal damaging is a lesser included offense of safecracking, we do not find any indication in the record that the trial court abused its discretion. Thus, after reviewing the evidence in a light most favorable to the defendant, we conclude that the trial court did not err in denying Dayton's request for a jury instruction on criminal damaging. For these reasons, Dayton's fourth assignment of error is overruled.

*Conclusion*

{¶41} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Seneca County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**SHAW and PRESTON, J.J., concur.**

**/hls**